UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DOUGLAS P. SCALIA,

                      Plaintiff,

              v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                      Defendant.
_____

**DECISION
and
ORDER**

**18-CV-01044F**
(**consent**)

APPEARANCES:              LAW OFFICES OF KENNETH R. HILLER, PLLC
                                Attorneys for Plaintiff
                                CORINNE MANFREDI, of Counsel
                                6000 North Bailey Avenue
                                Suite 1A
                                Amherst, New York 14226

                                JAMES P. KENNEDY, JR.
                                UNITED STATES ATTORNEY
                                Attorney for Defendant
                                Federal Centre
                                138 Delaware Avenue
                                Buffalo, New York 14202;

                                LAURA RIDGELL-BOLTZ
                                Special Assistant United States Attorney, of Counsel
                                Social Security Administration
                                Office of General Counsel
                                1961 Stout Street
                                Suite 4169
                                Denver, Colorado 80294, and

                                LAUREN ELIZABETH MYERS
                                Social Security Administration
                                Office of General Counsel
                                26 Federal Plaza
                                Room 3904
                                New York, New York 10278

---

[1] Andrew M. Saul became Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On October 7, 2019, this matter was reassigned to the undersigned before whom the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this court's June 29, 2018 Standing Order (Dkt. No. 13). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on May 20, 2019 (Dkt. No. 9), and by Defendant on July 19, 2019 (Dkt. No. 11).

## BACKGROUND

Plaintiff Douglas Scalia ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications filed with the Social Security Administration ("SSA"), on March 12. 2015, for Supplemental Security Income under Title XVI of the Act ("SSI"), and on March 18, 2015, for Social Security Disability Insurance under Title II of the Act ("SSDI"), (together, "disability benefits"). Plaintiff alleges he became disabled on January 1, 2015, based on a bipolar disorder, panic attacks, anxiety, mood swings, and depression.

Plaintiff's application initially was denied on May 5, 2015, (R. 106), and at Plaintiff's timely request, on May 19, 2017, a hearing was held in Buffalo, New York. (R. 31-94). Appearing and testifying at the hearing were Plaintiff, Plaintiff's attorney Kelly Laga-Sciandra, Esq., and vocational expert Timothy Janikowski ("VE"). On July 27, 2017, the ALJ issued a decision denying Plaintiff's claim (R. 10-22) ("the ALJ's decision"), which Plaintiff timely appealed to the Appeals Council. (R. 4). On July 26, 2018, the Appeals Council issued a decision denying Plaintiff's request for review,

rendering the ALJ's decision the Commissioner's final decision. (R. 1-4). On September 21, 2018, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision. (Dkt. No. 1).

On May 20, 2019, Plaintiff moved for judgment on the pleadings (Dkt. No. 9) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 9-1) ("Plaintiff's Memorandum"). On July 17, 2019, Defendant moved for judgment on the pleadings (Dkt. No. 11) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Defendant's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Standing Order on Social Security Cases (Dkt. No. 11-1) ("Defendant's Memorandum"). Plaintiff filed on August 9, 2019, Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 12) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

# **FACTS**[2]

Plaintiff Douglas Scalia ("Plaintiff"), born on January 30, 1970 (R. 213), was 44 years old as of January 1, 2015, Plaintiff's alleged disability onset date ("DOD"), is single, is a high school graduate and lives with his parents. Plaintiff's past relevant work includes work as a security guard from August 2009 until December 2014, when Plaintiff stopped working as a result of his anxiety and bipolar disorder. (R. 216-17). Plaintiff

---

[2] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

started receiving mental health counseling with Kevin Beckman ("Mr. Beckman"), a counselor with Spectrum Health Services ("Spectrum"), in 2010. Relative to Plaintiff's disability onset date of January 1, 2015, Mr. Beckman provided mental health counseling to Plaintiff on July 21, 2015 (R. 571), August 7, 2015 (R. 571), September 14, 2015 (R. 572), October 7, 2015 (R. 573), and November 23, 2015 (R. 589). Plaintiff missed scheduled treatment sessions with Mr. Beckman on April 16, 2015 (R. 540), May 29, 2015 (R. 555), and July 27, 2015 (R. 571). On April 15, 2015, Meliton Tanhehco, M.D. ("Dr. Tanhehco"), a psychiatrist with Spectrum, completed a medication evaluation on Plaintiff and noted that Plaintiff reported being laid off from his job, feeling anxious and panicky because his mother was receiving cancer treatment, and denied suicidal ideations. (R. 334). On November 17, 2015, Jeffrey Kashin, M.D. ("Dr. Kashin"), a treating psychiatrist with Spectrum, completed a medication evaluation on Plaintiff and noted that Plaintiff reported "everything is going okay," and denied depression and mood swings. (R. 589). On February 23, 2015, Dr. Kashin completed a medication evaluation on Plaintiff and, upon Plaintiff's report of increased mood swings, increased Plaintiff's Depakote (bipolar) medication. (R. 338). On April 19, 2015, Dr. Kashin again increased Plaintiff's Depakote medication in response to Plaintiff's continued report of increased mood swings. (R. 339).

 On May 1, 2015, C. Butensky, a physician with the Social Security Administration ("Dr. Butensky"), completed a Disability Determination Explanation at the initial level of Plaintiff's application and noted that the evidence in the record was insufficient to make a determination of disability. (R. 98).

On May 17, 2016, Dr. Kashin noted that Plaintiff reported feeling better after the increase in Depakote and doing well except for broken sleep. (R. 340). On August 23, 2016, Dr. Kashin changed Plaintiff's sleep medication from Seroquel to Trazodone in response to Plaintiff's reports of insomnia from racing thoughts. (R. 341).

On August 31, 2016, Plaintiff completed a suicide ideation and severity questionnaire and reported thoughts of killing himself in the past three months and a history of not wanting to "be around" after experiencing anxiety attacks. (R. 342). Upon reviewing Plaintiff's suicide questionnaire, mental health counselor Jessica Okoniewski ("Ms. Okoniewski"), a counselor with Spectrum, evaluated Plaintiff with a moderate suicide risk. (R. 349).

On May 25, 2017, Dr. Kashin completed a mental health questionnaire on Plaintiff and evaluated Plaintiff with anhedonia (loss of interest in almost all activities), unstable personal relationships, decreased energy, blunt, flat or inappropriate affect, impaired impulse control, mood disturbance, maladaptive patterns of behavior, difficulty thinking or concentrating, history of substance abuse, sleep disturbances, emotional withdrawal or isolation, bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes, moderate limitation to restriction of activities of daily living, maintaining social functioning, concentration, persistence or pace, no repeated episodes of decompensation, and opined that Plaintiff's impairment and treatment would result in Plaintiff missing more than four days of work each month. (R. 600-02).

## **DISCUSSION**

**1. Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has

instructed . . . that the factual findings of the Secretary,[3] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2.      Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth

---

[3] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found that Plaintiff met the Act's insured status requirement for SSDI through December 31, 2019, (R. 12), did not engage in substantial gainful activity since January 1, 2015, Plaintiff's alleged disability onset date, suffers from the severe impairments of bipolar disorder, anxiety, depression, obesity, lumbago, and lower leg pain from chronic pain syndrome, and that Plaintiff's diabetes, asthma, high cholesterol, history of drug and alcohol abuse in remission, and paraphilia (sexual disorder) not otherwise specified ("NOS"), have no more than a minimum impact on Plaintiff's ability to perform basic work activities and, thus, are non-severe

8

impairments. (R. 13). The ALJ further found Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in Appendix 1 (R. 13-14), retains the RFC to perform light work with limitations to performing low stress jobs that require understanding, remembering, carrying out simple routine tasks, no production pace work, occasional changes in workplace schedules, processes and settings, occasional interaction with supervisors, coworkers and the public and no tandem or team work with coworkers (R. 16), is unable to perform his PRW as a security guard (R. 20), but, given that Plaintiff is a younger individual between the ages of 18 and 49 as of Plaintiff's alleged disability onset date, has a high school education and the ability to communicate in English, has the residual functional capacity to perform light work despite no transferable skills from his PRW, jobs exist in significant numbers in the national economy that Plaintiff can perform, including office helper and inspector such that Plaintiff is not disabled as defined under the Act. *Id.* at 21.

Plaintiff argues that the ALJ erroneously applied the treating physician rule by granting only some weight to Dr. Kashin's opinion that Plaintiff had moderate limitations to activities of daily living, maintaining social functioning, maintaining concentration, persistence and pace, and would likely miss more than four days of work each month, because Dr. Kashin's findings were set forth on a check-box form with no explanation, Plaintiff's Memorandum at 12-17 (referencing R. 20), and that the ALJ failed to provide good reasons for discounting Dr. Kashin's opinion. *Id.* at 12-17. Plaintiff argues that the ALJ further erred by affording some weight to Dr. Butensky's consultative opinion as Dr. Butensky's opinion was proffered two years prior to the ALJ's decision and therefore on

9

an incomplete medical record.  Plaintiff's Memorandum at 15.  Defendant maintains that the ALJ properly afforded only some weight to Dr. Kashin's findings (R. 20), as such findings were submitted on a check-box form that provides no rationale for Dr. Kashin's findings, and that Dr. Kashin's finding that Plaintiff was likely to miss more than four days of work each month is not supported by substantial evidence in the record. Defendant's Memorandum at 12.

Plaintiff's disability applications filed on March 12, 2015 and March 18, 2018, are subject to the treating physician rule.  *See* 20 C.F.R. §§ 404.1527, 416.927 (2017). Generally, the opinion of a treating physician is entitled to significant weight but only when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with other substantial evidence in the case record." *Crowell v. Comm'r of Soc. Sec. Admin.*, 705 Fed. App'x. 34, 35 (2d Cir. 2017) (quoting *Burgess v. Astrue ("Burgess")*, 537 F.3d 117, 128 (2d Cir. 2008), 20 C.F.R. § 404.1527(d)(2)).  In instances where the ALJ discounts a treating physician's opinion however, the ALJ must set forth "good reasons" for doing so.  *Burgess*, 537 F.3d at 129 (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).  The failure to provide good reasons for rejecting a treating physician opinion is grounds for remand.  *Schall v. Apfel*, 134 F.3d 496, 503-05 (2d Cir. 2004) (*per curiam*) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician['s] opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

Here, the ALJ afforded "some weight" to Dr. Kashin's opinion that Plaintiff would miss more than four days of work each month because such finding was inconsistent with evidence that Plaintiff's mental impairments were stable and appeared solely on a "check box" form with no supporting explanation. (R. 20). As Plaintiff's treating psychiatrist, Dr. Kashin rendered medical opinions regarding Plaintiff's anxiety, depression and bipolar disorder, provided medication management for Plaintiff on February 23, 2015 (R. 338), April 19, 2015 (R. 339), May 17, 2015 (R. 340), November 17, 2015 (R. 589), May 17, 2016 (R. 340), and August 23, 2016 (R. 341), and completed a standardized Mental Impairment Questionnaire form on May 25, 2017 (R. 599-602). There is no authority to support Defendant's argument that check-the-box forms are less reliable than other medical forms, s*ee Garcia Medina v. Commissioner of Social Security*, 2019 WL 1230081, at *3 (W.D.N.Y. Mar. 15, 2019) ("[t]here is no authority that a 'check the box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments"), and the ALJ's determination that the form completed by Dr. Kashin was insufficient to support Dr. Kashin's findings would normally require remand to afford the ALJ the opportunity to contact Dr. Kashin for further explanation. *See McGee v. Commissioner of Social Security*, 2019 WL 3450964, at *6 (W.D.N.Y. Jul. 31, 2019) (disability decisions with an onset date before March 27, 2017, require adherence to the treating physician rule and the ALJ's duty to recontact a claimant's treating physician to complete the record where necessary). As the ALJ determined, however (R. 20), Dr. Kashin's finding that Plaintiff would likely miss more than four days of work each month is not supported by substantial evidence in the

record.  On February 7, 2014, Mr. Beckman noted that Plaintiff continued to demonstrate mental stability, reported taking his bipolar medication on a regular basis on April 28, 2014, July 14, 2014, December 8, 2014, February 16, 2015, and July 21, 2015, was successful in using self-calming, and reframing techniques to control his behavior (R. 577-78), denied mood swings and side effects from medication, and reported normal activities of daily living on August 25, 2015 and October 7, 2015 (R. 570-73).  On November 17, 2015, Dr. Kashin noted that Plaintiff reported "everything is going okay" with no depression or mood swings (R. 589).  Dr. Kashin altered Plaintiff's Depakote dosage to better control Plaintiff's increased mood swings On February 23, 2015 and April 19, 2015.  (R. 338-39).  The ALJ's determination to afford only some weight to Dr. Kashin's finding that Plaintiff's mental impairment would likely cause Plaintiff to miss more than four days of work each month without medically-based explanation is therefore supported of substantial evidence in the record.  Accordingly, Plaintiff's motion is DENIED.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. No. 9) is DENIED; Defendant's Motion (Dkt. No. 11) is GRANTED.  The Clerk of Court is directed to close the file.
SO ORDERED.

/s/ Leslie F. Foschio

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    December 16, 2019
             Buffalo, New York